### KEY v. WEATHERSBEE.

1. WILL—WITNESS—INTEREST.—Where a witness to a will would have taken nothing as an heir at law, but his wife would have taken a portion of less value than the testamentary gift to her husband, is the gift to the husband wholly defeated, or only to the extent of its excess over his wife's portion as a distributee, in case there had been intestacy?

2. VOID GIFT FOR LIFE—ACCELERATED REMAINDERS.—Where a devise to one for life is made void by statute because this devisee attested the will as a subscribing witness, the remainders, declared after the termination of the life estate, are accelerated and vest at once. The failure of the gift for life ever to have taken effect did not destroy the remainders.

3. LIMITATION OF ESTATES—BENEFICIAL INTEREST.—Where a tract of land was devised to A and his wife for life and the life of the survivor, with remainder to B, all the rents and profits to go to B, C, and D, until the death of A and his wife, and then by a codicil it was given in remainder to C instead of B, it was properly held that A and his wife had no beneficial interest in this land.

Before NORTON, J., Barnwell, March, 1894.

Action by James Key and others against Charlce Ann Weathersbee, Floyd W. Weathersbee, and others, for partition. The Circuit decree states all that is necessary to a full understanding of the case, except as to the "Dickes Place." That was devised to F. W. and C. A. Weathersbee, together with

the home place and Darlington place, for life, with remainder to the survivor for life. After the death of such survivor, the Dickes place was devised to Jane B. Weathersbee (changed by a codicil to James M. Weathersbee), but all the rents and profits, until such remainder in fee vested, were given to Bessie, Jane B., and James M. Weathersbee. The Circuit decree was as follows:

The plaintiffs allege in their complaint that the said Bethaney Moore left a last will and testament and two codicils thereto, which have been duly admitted to probate, and which contain devises to Floyd W. Weathersbee and Charlce Ann Weathersbee, his wife; and it is further alleged, that because the said Floyd W. Weathersbee is a witness to the said will and codicils, that he can take nothing under the same, he not being an heir at law of the testatrix; and it is further alleged, that the devises to the said Charlce Ann Weathersbee (who is an heir at law of the testatrix) being of greater value than the interest that she would take in the said estate as an heir at law, that it follows such devises to her are null and void; and it is then alleged, that there being no particular estate to support the remainders which are devised to Bessie, Jane B., and James Moore Weathersbee, the same are defeated, and partition is asked of the real estate left by the testatrix, the same as if there had been no last will and testament. The answer of the defendants deny that the plaintiffs have any interest in the said estate; and it is further alleged in the answer, that even if the devise to Floyd W. Weathersbee is forfeited under the statute, and that the estate devised to Charlce Ann Weathersbee is in part forfeited under the statute, that the remainder to James Moore and Bessie are not defeated, but, to the contrary, are thereby accelerated and vest at once.

The case is presented mainly upon an agreed statement of facts, and I find therefrom as follows: That Bethaney Moore died in the early part of the year 1890, leaving a last will and testament, and two codicils thereto, which were duly admitted to probate in the Court of Probate for Barnwell County. That Floyd W. Weathersbee is one of the subscribing witnesses to said will and each of the codicils. That the plaintiffs and the

defendant, Charlce Ann Weathersbee, are the heirs at law of the testatrix, and as such would be interested in her estate in the proportions set forth in the complaint. That Floyd W. Weathersbee is not an heir at law of the testatrix, but the husband of the defendant, Charlce Ann Weathersbee, and Bessie, Jane B., and James Moore Weathersbee are the children of Floyd W. and Charlce Ann Weathersbee, and they are the grand-nieces and nephew of Bethaney Moore. The will, as modified by the codicils, contains the following devises, namely: to Floyd W. Weathersbee and Charlce Ann, his wife, is given a life estate in the testatrix's "home place" and the "Darlington place," to have and to hold the same in common between themselves, for and during the term of their natural lives, and should one survive the other, the whole shall remain in such surviving one during the term of his or her natural life. At the death of the survivor of the said Floyd W. Weathersbee and Charlce Ann, the "homestead place" is devised in fee to Bessie Weathersbee, and the "Darlington place" and the "Dickes place" is at the same period devised to the said James Moore Weathersbee.

By the 5th clause of the will, all the rents and profits arising from the "Dickes place," which may accrue between the death of the testatrix and the death of the survivor of the said Floyd W. and Charlce Ann, is devised to the said Bessie, Jane B., and James Moore Weathersbee, to be equally divided between them; Floyd W. and Charlce Ann Weathersbee taking no beneficial interest in the "Dickes place." A legacy of two hundred dollars in gold is given to the said Bessie Weathersbee, and directed to be used in purchasing a piano for her when she arrived at the age of twelve years, or sooner, if the executors of the will saw fit to do so. A legacy of nine hundred and fifty dollars is given to the said Charlce Ann Weathersbee and her children, Bessie, Jane B., and James Moore Weathersbee. Under this provision, the said Charlce Ann takes one-fourth of the nine hundred and fifty dollars, and one-fourth of the said amount goes to each of the said children. The balance of testator's property, after the legacies are paid, is devised to Floyd W. and Charlce Ann Weathersbee.

Under these facts the plaintiffs allege, as above stated, that the will is practically superceded by the statute law of this State (sec. 1974 of the Revised Statutes, new edition); that there is no precedent estate to support the remainder in the real estate. That Floyd W. Weathersbee takes nothing, and Charlce Ann, his wife, only as much as she would take under the statute as heir at law, and not under the will. But I hold to the contrary, that the statute provides that "such devise, legacy, and bequest shall be valid and effectual * * * except so far as the property, estate, or interest so devised or bequeathed shall exceed in value any property, estate, or interest to which such witness, or the husband or wife of such witness, would be entitled upon the failure to establish such will * * * but to the extent of such bequest, devise, or legacy, shall be null and void." [1]

It is clear, under section 1974, that the devise to Floyd W. Weathersbee is void; and that the devise to Charlce Ann Weathersbee, his wife, is void as to the excess of such devise over and above what she would take as heir at law, but to that extent it is valid, and she takes the same under the will. It appears that the said Charlce Ann would be entitled to the one twenty-fifth (1–25) part of the entire estate as heir at law, and to that extent her devise under the will is valid. The agreed facts are not sufficiently full for me to ascertain the value of the estate, and it will be necessary to refer the case to the master to ascertain such value.

The ascertained will of the testatrix is contained in the written instrument, as admitted to probate. It can be defeated only by enforcing the forfeiture pronounced by the statute, on account of Floyd W. Weathersbee being a subscribing witness thereto. This will be done so as to inflict as little injury as possible upon innocent third parties who were the objects of the testatrix's bounty, and interfere no more with the terms of the will than necessary to meet the requirements of the law. In my judgment, that is fully done in declaring as forfeited all

[1] See remarks as to this citation in the opinion of this court. The Circuit Judge had before him the codification of the laws, as reported to the Legislature. See R. & R. of 1893, vol. 1, part 2, p. 679.—REPORTER.

that Floyd W. Weathersbee would take under the will, and in cutting down the estate and legacy to Charlce Ann to an amount equal in value to what she would have taken as heir at law of the testatrix; which, we have seen, amounts to one twenty-fifth (1-25) part of the estate.

It is manifest from the will, that the reason why the testatrix postponed the enjoyment of the estate left to her grand-nephew and nieces was, because she supposed that the devise of the life estate to Floyd W. and Charlce Ann Weathersbee was valid. Such life estate being defeated wholly as to Floyd W. Weathersbee and in part as to Charlce Ann, will not on that account destroy the remainder to their children; but the effect is, the life estate being out of the way, the remainders are accelerated, and vest at once in the children. It cannot be doubted that the testatrix postponed the enjoyment of the estate left to the grand-nephew and nieces solely because she desired the parents to have a life estate. Now, it matters not how the life estate falls in, whether by the death of the life tenant or by the forfeiture under the statute; in either case, the remainderman takes as soon as the life estate ceases to exist.

This construction seems to me sound upon principle, and is supported elsewhere by the most respectable authority. The reasoning in the case of *Jull* v. *Jacobs*, L. R., 3 Ch. Div., 709, cited by defendant's counsel, meets my hearty approval; and in the case of *Woodbery* v. *Collins*, 1 DeS., 424, while not in point, yet shows the inclination of our courts to construe the statute the same as the English courts have done. See, also, 20 Am. & Eng. Enc. Law, 895, where the case of *Jull* v. *Jacobs* is cited with full quotation. But whatever view I might entertain as to the argument presented by the plaintiff's counsel, I could not interfere with the testatrix's disposition of the "Dickes place," the whole beneficial interest in which is devised to other than those against whom the law inflicts its penalties, nor of the two hundred and fifty dollars given to Bessie Weathersbee, nor of at least three-fourths of the nine hundred and fifty dollars given to the children of the said Charlce Ann.

It is, therefore, ordered, adjudged, and decreed, that the

vested remainder of Bessie Weathersbee in the homestead place and of James Moore Weathersbee in the Darlington place be, and the same are hereby, declared accelerated as to the whole or any part of the life estate not required to make up to the said Charlce Ann Weathersbee the one twenty-fifth part in the value of the testatrix's estate. It is further ordered and adjudged, that it be referred to the master of Barnwell County to ascertain and report the total value of the real and personal estate left by the said Bethauey Moore, deceased, and how much thereof has been expended in the payment of the expenses of the administration, including the probate costs of this suit. That he also ascertain and report the value of the life estate devised to Charlce Ann Weathersbee in each the homestead place and the Darlington place. * * *

It is further ordered and adjudged, that the master report in detail a scheme for setting apart to the said Charlce Ann Weathersbee the one twenty-fifth part in value of the estate of the testatrix out of the interest devised or bequeathed to her in the following order, to wit: First, out of the one-fourth part of the $950 bequeathed to her. Second, out of the residuary estate; and third, out of the life estate devised to her and her husband in the homestead and Darlington places. It is further ordered and adjudged, that when the foregoing provisions of the order have been carried out, and if it therefrom appear that there is a surplus of the residuary estate of testatrix, that then such surplus be divided among the plaintiffs according to their respective interests as set forth in the complaint therein, excluding in such division the defendant, Charlce Ann Weathersbee. It was stated at the hearing that there were no debts against the estate of the testatrix, hence there is no reason why the rights of the parties hereto may not now be fully adjudicated.

The plaintiff appealed on the following grounds: 1. Because his honor erred in holding that where the life estates intended to support remainders, as in this case, are void in their creation by virtue of a statute, that the remainders would be accelerated and vest at once. 2. Because his honor should have held, that there being no particular precedent estate in this case to sup-

port the remainders limited to the children of Floyd W. and Charlce Ann Weathersbee by the will of Bethaney Moore, that the same were void, and that the estates devised should pass as intestate property.    3. Because his honor erred in holding as follows: "Now, it matters not how the life estate falls in, whether by death of the life tenant or by forfeiture; under the statute, in either case the remaindermen take as soon as the life estate ceases to exist; for the reason that, in this case, no life estate ever existed to cease, the same being void in its creation by operation of law."    4. Because his honor erred in holding that Charlce Ann and Floyd W. Weathersbee take no beneficial interest in the Dickes place; whereas he should have held that the testatrix attempted to create in them a life estate in said place as in the other property, and that the same stood on a similar footing with the Darlington place and the home place. 5. Because his honor erred in referring the case to the master to ascertain the value of the interest which Charlce Ann Weathersbee takes, and to report a scheme for the settlement of same; it being agreed that she would take one twenty-fifth part in said estate, this being the interest which she would take as heir at law of the said Bethaney Moore.    6. Because his honor should have held that, as the life estate devised to Charlce Ann Weathersbee by said will was in excess of the interest which she would have taken in case of intestacy, and her interest being reduced to one twenty-fifth part of said estate in consequence of her husband being one of the subscribing witnesses to the said will and codicils, that this would transform the interest of Charlce Ann Weathersbee to that of a fee in said property, and would, therefore, of necessity disorganize the remainders attempted to be created by the said will and codicils.

*Messrs. W. A. Holman* and *Henderson Bros.*, for appellants.

*Messrs. Croft & Chafee*, contra.

March 29, 1895.    The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.    The questions raised by this appeal involve the proper construction of the will of the late Mrs. Bethaney Moore, with the two codicils thereto, as affected

by the provisions of the act of 1865, incorporated in the Revised Statutes of 1893 as section 1991. For a full understanding of the facts of the case, about which there is no dispute, and of the questions presented by the appeal, reference must be had to the decree of his honor, Judge Norton, and the exceptions thereto, all of which should be incorporated in the report of this case, care being taken to correct the error in the decree, giving the section of the Revised Statutes referred to as section 1974 instead of 1991, and the omission in the latter part of the quotation from that section, arising, doubtless, from a misprint.

It will be sufficient to state here that the testatrix by her will specifically devised certain real estate to the defendants, Charlce Ann Weathersbee and her husband, Floyd W. Weathersbee, for their joint lives, and to the survivor of them during the life of such survivor, with remainder to the other three defendants, Bessie, Jane, and James Moore Weathersbee; but as it is conceded that the said Floyd W. Weathersbee was a subscribing witness to the will, as well as to the two codicils, the question is as to the effect of this conceded fact upon the provisions of the will just stated, under the provisions of section 1991 of the Revised Statutes above referred to. That section reads as follows: "No subscribing witnesses to any will, testament or codicil shall be held incompetent to attest or prove the same by reason of any devise, legacy or bequest therein in favor of such witness, or the husband or wife of such witness, or by reason of any appointment therein of such witness, or the husband or wife of such witness, to any office, trust or duty; and such devise, legacy or bequest shall be valid and effectual, if otherwise so, except so far as the property, estate or interest so devised or bequeathed shall exceed in value any property, estate or interest to which such witness, or the husband or wife of such witness, would be entitled upon the failure to establish such will, testament or codicil, but to the extent of such excess, the said devise, legacy or bequest shall be null and void, and such appointment shall be valid, if otherwise so, but the person or persons so appointed shall not, in such case, be entitled by law to take or receive any commissions or other compensation on account thereof."

The Circuit Judge held that the effect of this statutory pro-
vision was to destroy or forfeit all the interest that Floyd W.
Weathersbee would otherwise have taken under the will, and
to cut down the interest of Charlce Ann to an amount not ex-
ceeding in value the interest which she would have taken as
heir at law if there had been no will, which, it is conceded,
would have been one twenty-fifth part of the estate. And he
further held that this did not destroy the interest in remainder
intended for the children of Charlce Ann, but that the effect
was simply to accelerate the remainders, which, therefore, took
effect at once. The appellants, on the other hand, contend that
the precedent life estate having been destroyed, the remainders
were defeated, and the estate of the testatrix became divisible
amongst the heirs at law as intestate property, and the main
question in the case is, which of these two views is correct.

Before proceeding to the consideration of that question, it
may not be amiss to say, simply to avoid committing the court
upon the point, that it may, possibly, be open to question
whether the Circuit Judge was right in holding that the
effect of the statute was to destroy *all* of the interest of
the husband, Floyd W. Weathersbee, in the estate intended to
be devised to him, inasmuch as the language of the statute is
*not* that a devise to a witness shall be void to the extent of its
excess in value over the interest which "such witness" would
take had there been no will, but the language is, "to which
such witness, *or the husband or wife of such witness,* would be
entitled upon the failure to establish such will." Now, as *the
wife of the witness,* Floyd W. Weathersbee, would, confessedly,
be entitled, upon the failure to establish the will, to one twenty-
fifth of the whole estate, it is, at least, open to question whether
the interest intended to be given to Floyd W. Weathersbee by
the will, is *entirely* defeated by the statute, or only to the extent
of its excess in value over the one twenty-fifth part of the estate.
But as there is no exception to the ruling of the Circuit Judge as
to this particular point, and as it is not really necessary or even
important to the solution of the question which we are called
upon to decide, we do not wish to be regarded as deciding or
even expressing any opinion distinctly upon that question.

Recurring, then, to the main question, we think it is satisfactorily determined in favor of the view taken by the Circuit Judge by the case of *Jull* v. *Jacobs*, L. R., 3 Chan. Div., 2 709, cited both by the judge and the counsel for respondents. That case is not distinguishable from the present, for in that case the testator devised both real and personal property to his daughter, "during her lifetime, and after her decease the property to be equally divided between her children on their becoming of age," and it was held that, in respect to the real estate, the gift to the children was strictly a vested remainder; that the construction as to the personalty followed the rule as to the realty, and the gift to the daughter being void, on account of her having attested the will, the gift to the children was accelerated and took effect immediately. Malins, V. C., in delivering the opinion of the court, after showing that the clause of the will above recited created a vested remainder in the children, proceeded as follows: "But then comes the question whether the Wills Act, by taking away the life estate of the daughter, causes an intestacy during her life so as to carry the property to the heir at law, or accelerate the remainder. It is perfectly clear, in the first place, that the children are postponed to the mother simply because the mother is to have the property for her life, but if the mother cannot have the property for her life, why are the children to be postponed? The reason of their postponement altogether ceases; they are not to have it until after her death, because the testator assumed that she would have it during her life. But he was ignorant of the law that if he called in his daughter to be an attesting witness, the very gift he made her would absolutely fail. Now, he has postponed his grand-children—that is, his daughter's children—to the daughter, solely because the daughter was to take for life, and if he had known that she could not take for life, he would not have postponed the children until after her death; he would not have left her and her family destitute in the meantime. It is a mere accident that the daughter cannot take the life estate, and I am of opinion that the children are postponed to the daughter simply that she may have the property for life, and if she could not have it for life, the children would have had it

immediately. That would be the conclusion I should come to from the reason of the thing, without the decisions. But the decisions are all the same way." And the learned vice-chancellor proceeds to cite the cases to that effect. That case is so exactly in point, and the reasoning employed is so directly applicable to the case under consideration, that it would seem to be unnecessary to say more.

It is true that, so far as we are informed, we have no case in this State directly on the point. But we do find cases cited by respondent's counsel, which, by analogy, support our conclusion. In *Lesly* v. *Collier*, 3 Rich. Eq., at page 128, it is said by Dargan, Ch., that "If there be a legacy to one for life, with remainder to another, which remainder on the death of the testator would be direct and vested, and not contingent, and the person intended to be the tenant for life dies in the lifetime of the testator, I think it cannot be doubted that, in such a case, the legacy does not lapse, but, on the death of the testator, goes at once to him who, in the scheme of the legacy, was intended to be only a remainderman." The same doctrine is laid down by DeSaussure, Ch., in *Dunlap* v. *Dunlap*, 4 DeS., at page 314. To the same effect, see *Bell* v. *Towell*, 18 S. C., 101.

Now, as a will speaks at the death of the testator, it is clear that in these cases no precedent life estate was ever really created, inasmuch as the proposed life tenant was dead at the time the will took effect, for a devise or bequest to a person deceased at the time is void *ab initio* (*Pegues* v. *Pegues*, 11 Rich. Eq., 554), except in the case specially provided for by the act of 1789; and, hence, the position so strenuously urged by counsel for appellants, that it is only in a case where a precedent life estate has been created which has *subsequently* been defeated or destroyed, that the doctrine of the acceleration of the remainder can be applied, cannot be sustained. Besides, in the case of *Lomas* v. *Wright*, 2 Myl. & K., 769, cited by the counsel for respondents, it seems to have been held that where a limitation is void, being to a monk for life, who was regarded as civilly dead, the estate will not revert to the grantor, but the next limitation in remainder will take effect. And in *Avelyn* v. *Ward*, 1 Ves., sr., 420, recognized in *Doe d. Wells* v. *Scott*,

3 M. & S., 300, as well as by our own court in *Witherspoon* v. *Watts*, 18 S. C., at page 411, Lord Hardwicke said, "that he knew of no case of a remainder or conditional limitation over of a real estate, whether by way of a particular estate so as to leave a proper remainder, or to defeat an absolute fee before, by a conditional limitation; but if the precedent limitation, *by what means soever*, is out of the case, the subsequent limitation takes place." See, also, 2 Jarm. on Wills (Perkins' edit.), 702, where it is said in effect, that where an estate is given to a person for life, with a vested remainder in another, such remainder "takes effect in possession whenever the prior gift ceases *or fails, in whatever manner.*"

We are, therefore, of opinion that there was no error on the part of the Circuit Judge in the view which he took of the main question in the case. This disposes of the first, second, third, and sixth exceptions.

As to the fourth exception, we do not see what interest the appellants have in the question there raised, under the conclusion which we have adopted. But, at all events, we may say that we concur with the Circuit Judge in the view which he has taken. We do not see that the testatrix intended that Charlce Ann and Floyd W. Weathersbee were to take any beneficial interest whatever in the Dickes place. By the fifth clause of the will, all of the rents and profits which accrued from that place between the date of the death of the testatrix and the death of the survivor of Floyd W. and Charlce Ann Weathersbee, were given to their three children, Bessie, Jane B., and James Moore Weathersbee, and by the first codicil, the place itself is to go to James Moore Weathersbee, upon the death of the survivor of Floyd W. and Charlce Ann Weathersbee, when the right of the three children to share equally in the rents and profits of the Dickes place ceases. We do not see what possible beneficial interest either Floyd W. Weathersbee or his wife can have in that place. The utmost that could be said, is that they were to act as trustees for their children and to hold the Dickes place, and pay over the rents and profits thereof to their children, until the death of the survivor of the parents.

It is very clear, under the view which we have taken, that the fifth exception cannot be sustained.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.